(Decided 14th February, 1883.)

## THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* ROBERT B. PUMPHREY.

*Form of action against a Common Carrier—Measure of damages—Duty of Common Carriers to be Faithful and diligent in their efforts to Deliver to the right person—Province of Jury—An erroneous Instruction to the Jury no ground of Reversal, where no harm resulted from it.*

In actions against a common carrier, for the breach of a contract for the carriage and delivery of goods, the suit may be framed either *ex contractu*, upon the breach of the engagement, or *ex delicto*, upon the violation of the public duty. But whether the action be assumpsit on the contract, or case for the violation of duty, the same law is applicable to both classes of action, and the measure of damages is equally a question of law, and as much under the control of the Court, as if the right rested in agreement only.

As a general rule the measure of damages in such cases is the value of the goods at their place of destination, with compensation for the actual loss, which is the natural and proximate consequence of the act, and excluding remote or indirect losses. The loss sustained by the plaintiff in his general business does not come under this rule.

Common carriers deliver property at their peril; for if delivery be to a wrong person, they will be responsible to the rightful owner. It is their duty, therefore, in all cases to be diligent in their efforts to secure a delivery to the person entitled, and they will be protected in refusing delivery until reasonable evidence is furnished them

that the party claiming is the party entitled, so long as they act in good faith and solely with a view to a proper delivery; but it is their duty in all cases to be diligent in their efforts to secure a delivery to the person entitled.

Where the mark upon the goods differs from the way-bill, the carrier is justified in exercising caution, and it is a question for the jury whether in exercising such caution he acted in good faith, and whether the delay in the delivery of the goods was reasonable, and caused solely by the difficulty in identifying the goods.

Where it is apparent from their verdict that the jury did not take into consideration, in assessing the damages, any injury done to the business of the plaintiff, the erroneous granting of an instruction authorizing them to include such injury in their estimate of damages, will be no ground for disturbing the verdict.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff having testified to the refusal of the defendant by its officers to deliver to him certain beef, the plaintiff's counsel then asked witness what effect did the refusal to deliver the beef have on his business. The defendant objected to the question and proof offered, but the Court (MILLER and HAYDEN, J.,) overruled the objection and permitted the question to be asked and answered. The defendant excepted.

*Second Exception.*—The plaintiff offered the two following prayers :

1. If the jury find from the evidence, that the plaintiff was engaged in the business of selling beef and other produce in Baltimore, and had, for such business, ten or more stalls in the several city markets, and also had a wagon route, by which he supplied or sold beef to from one hundred to two hundred stores in said city, and that the said business was large and profitable, and that said plaintiff purchased in the City of St. Louis, Missouri, eight boxes of beef, and that said beef was shipped from St. Louis, on the

12th or 13th of August, 1880, by the Ohio and Mississippi, and Baltimore and Ohio Railroads, to Baltimore City, and that said beef was received by the Baltimore and Ohio Railroad Company, at their depot in Baltimore City, on the 21st day of August, 1880, and that said company sent, and delivered to the plaintiff a notice notifying him that said property had arrived at Camden Station, in Car No. 12722, and requiring him to remove said property within twenty-four hours, or that the same would be stored at his expense; and also requiring said plaintiff to pay $8.25, freight on delivery, and that said plaintiff thereupon paid the draft of $202.15, offered in evidence, and that said plaintiff went to said depot of said company, and paid said freight, and then demanded the delivery of said beef, and that said company by its officers and servants, refused to deliver the said property to the plaintiff, without reasonable cause for said refusal, then their verdict must be for the plaintiff.

2. If the jury find from the evidence, that the plaintiff was engaged in the business of selling beef and other produce in Baltimore, and had, for such business, ten or more stalls in several city markets, and also had a wagon route, by which he supplied or sold beef to from one hundred to two hundred stores in said city, and that the said business was large and profitable, and that said plaintiff purchased in the City of St. Louis, Missouri, eight boxes of beef, and that said beef was shipped from St. Louis, on the 12th or 13th of August, 1880, by the Ohio and Mississippi, and Baltimore and Ohio Railroads, to Baltimore City, and that said beef was received by the Baltimore and Ohio Railroad Company, at their depot in Baltimore City, on the 21st day of August, 1880, and that said company, sent and delivered to the plaintiff a notice notifying him that said property had arrived at Camden Station, in Car No. 12722, and requiring him to remove said property within twenty-four hours, or that the same would be stored at his

expense, and also requiring said plaintiff to pay $8.25 freight on delivery, and that said plaintiff thereupon paid the draft of $202.15 offered in evidence, and went to said depot of said company and paid said freight, and then demanded the delivery of said property, and that said company by its officers and servants refused to deliver the said property to the plaintiff; and shall further find, that said refusal was made because the officers of said company on examination of said property, found that the boxes were marked "H," and in the manifest and the bill of lading were recorded "P," and that plaintiff told them the life of his business depended on the receipt of said goods, and that said agents of said company then promised to telegraph immediately to the west for information and instruction in regard to the delivery of said property to said plaintiff, and that the plaintiff received no notice from said company until the 26th or 27th of August, and that said company was guilty of negligence in not notifying said plaintiff before that date, and that because of the refusal to deliver said beef, and because of the negligence of said company in failing to notify said plaintiff before the 26th or 27th of August in regard to said beef, that the business of said plaintiff was greatly injured and damaged, and that by the exercise of great diligence, the plaintiff was unable to obtain any supply of beef to carry on his business, then the plaintiff is entitled to recover, and in estimating the damages, the jury may include such damages as they may find resulting to the business of the plaintiff by reason of such negligence down to the time of bringing this suit.

, And the defendant offered the fourteen following prayers:

1. That on the pleadings and evidence in the case the verdict of the jury must be for the defendant.

2. That there is no legally sufficient evidence in this cause of negligence on the part of the defendant or its agents, as would entitle the plaintiff to recover.

3. That there is no evidence of gross negligence in this cause, on the part of the defendant or its agents, to warrant the jury in awarding exemplary, vindictive or punitive damages against the defendant.

4. That the plaintiff is not entitled to recover in this action, unless the jury find that the defendant or its agents negligently refused to deliver the goods in question to plaintiff, and that the burden of proof showing such negligence, is on the plaintiff.

5. That the jury are not warranted in this action, and under the proof in the cause, to allow plaintiff any damages on account of the breaking up of his business, or the loss of profits thereof, as testified in evidence.

6. That even if the jury shall find that the defendant or its agent negligently refused to deliver the goods in question, that in estimating the damages to be allowed plaintiff, they must be confined to the value of said goods, on the day of their arrival, with interest thereon from the day of their said arrival.

7. That if the jury shall find that the goods in question, were detained by the defendant or its agents, as testified and in evidence, and that said detention was attributable to the erroneous marking of said goods by the Beef Canning Company of St. Louis, then the verdict of the jury should be for defendant.

8. That if the jury believe from the evidence in the case, that the defendant or its agents in refusing to make delivery of the beef in question, on the 21st day of August, 1880, were actuated solely from a desire to find out the true owner of said beef, then their verdict ought to be for the defendant; provided, they find that the circumstances under which said refusal was made, were reasonable and fair to insure the proper delivery of said goods.

9. That if the jury shall find that the beef in question was ready for delivery by the defendant, or its agents, on the afternoon of the 23rd of August, 1880, and that

plaintiff could have received said goods on said 23rd of August, 1880, by calling for the same, and that it was the usual and ordinary course of business for plaintiff to call for all freight consigned to him, at defendant's depot; and shall further find that plaintiff did not call for said goods, and take them away, and that if he had done so, he could have avoided all the injury complained of by him in this cause, then the verdict of the jury should be for the defendant.

10. If the jury find from the evidence, that the plaintiff was, on the 21st day of August, 1880, notified that a shipment of eight boxes of dried beef had been consigned to him, and was ready for delivery to him by the defendant; and shall further find, that on the bill of lading of said beef, said shipment was designated as "Diamond P;" and shall further find that all the papers in reference to said shipment, and to said beef received by, or in possession of, the defendant, as well as said bill of lading, had the same mark "Diamond P;" and shall further find, that said letter "P," enclosed in a diamond, by the usage of the consignor, was intended to indicate the initial letter of the consignee's name; and shall further find, that the plaintiff paid to the defendant, the freight charged by the defendant for the carriage of said goods from St. Louis to Baltimore, and received a receipt therefor, marked by an employé of the defendant, with letters to indicate to the delivery clerk of the defendant, on the platform of the depot of the defendant, authority to deliver the goods to the plaintiff corresponding with the said bill of lading; and shall further find, that the plaintiff took said receipt to said delivery clerk, and demanded the goods in said bill of lading referred to, or designated as aforesaid; and shall further find, that no such goods had been received by the defendant, marked as aforesaid, but that there were on said platform, eight boxes of dried beef, marked "Diamond H," and that the same were not addressed to the

plaintiff; and shall further find that the plaintiff on exami-
nation of said boxes, said that his bills of lading and receipt
called for goods marked " Diamond P," and that the goods
on the platform aforesaid, were marked "Diamond H," and
that they were not his goods, and that he wanted the goods
he had paid for marked "Diamond P ;" and shall further
find that the plaintiff, on the said 21st August, 1880,
between the hours of 12 m., and 1 o'clock, p. m., reported
to an employé of the defendant the fact that there were
no goods on the platform aforesaid, marked according to his
said bill of lading and receipt, but there were goods marked
" Diamond H," and proposed to an employé of the defend-
ant, who had informed him that he could not deliver the
goods marked "H," to him, without orders or instructions;
that a dispatch should be sent to the consignor at St.
Louis, or to the railroad officers at St. Louis, from whose
office said goods had been shipped, for instruction, or that
the plaintiff agreed to such proposition made by an
employé of the defendant; and shall further find that at
or about 1.15 o'clock, p. m., of said 21st August, 1880, the
dispatch offered in evidence was sent to the Freight Agent
of the Ohio and Mississippi Railroad Company at St. Louis,
as it purports; and shall further find that the answer read
in evidence was received to said telegram on Monday, the
23rd August, 1880, and immediately on its receipt, or as
soon as possible thereafter, a notice was sent by the defend-
ant to the place of residence of the plaintiff, notifying
him that he could have the said beef; and further find
that on the 25th day of August, 1880, the said plaintiff
was again notified by an employé of the defendant, that
he could have said beef, and that it was ready for delivery
to him, or words to that effect; and if the jury shall further
find, that the defendant used due diligence in telegraphing
to St. Louis, and in obtaining a reply therefrom with regard
to whom the said beef should be delivered, and also used
due diligence in giving the plaintiff notice of the answer

it received from St. Louis, and that the said beef was ready for delivery to him, or that he should call at it's Camden Depot, and get the said beef; and if the jury further find, that the plaintiff had notice as aforesaid, that he could have said beef, and thereafter, he did not make any enquiry at the office of the defendant in reference to said beef, or to an answer to said dispatch; and shall further find that said beef was ready for delivery to the plaintiff after the receipt of said answer of the 23rd August; and that said beef was in good condition on the 23rd, 24th, 25th and 26th days of August; that then the plaintiff is not entitled to recover in this action.

11. That if the jury find that the defendant was in the premises, guilty of negligence in the non-delivery of the dried beef in question, on the 21st of August, 1880; and shall further find that injury resulted to the plaintiff from, and by said negligence and refusal of the defendant, if so found; and shall further find that the plaintiff, by reasonable care and prudence, could have avoided such injury, then the plaintiff cannot recover in this action, and the verdict of the jury should be for the defendant.

12. That if the jury find that the defendant was in the premises, guilty of negligence in the non-delivery of the dried beef in question, on the 21st of August, 1880; and shall further find that injury resulted to the plaintiff, from, and by said negligence and refusal of the defendant, if so found, and shall further find that the plaintiff by reasonable care and diligence and prudence, could have avoided said injury in part; then if the jury find for the plaintiff, they can only find such damages as the plaintiff could not have avoided by such reasonable care, diligence and prudence.

13. That if the jury find for the plaintiff, they can only assess such damages as they find from the evidence. the plaintiff sustained by the defendant's acts in the premises, if any, up to the time of this suit brought.

14. That if the jury find for the plaintiff, they are not, under the pleadings and evidence in this cause, at liberty to consider, in making up their verdict, any but actual damages sustained, if any, by the plaintiff, and that they cannot give to the plaintiff speculative or punitive damages.

The Court granted the plaintiff's prayers, and the defendant's fourth, tenth, thirteenth and fourteenth prayers, and rejected it's first, second, third, fifth, sixth, seventh, eighth, ninth, eleventh and twelfth prayers. The defendant excepted, and the verdict and judgment being against it, this appeal was taken.

The cause was argued before ALVEY, YELLOTT, STONE, IRVING, and RITCHIE, J.

*James A. C. Bond,* for the appellant.

*George E. Cramer,* and *William J. O'Brien,* for the appellee.

STONE, J., delivered the opinion of the Court.

This action was brought by the plaintiff against the defendant, a common carrier, for the breach of a contract. The declaration states that the defendant undertook to carry, for hire, certain goods of the plaintiff from the city of St. Louis, and deliver the same to him in the city o Baltimore, and alleges as the breach of the contract, that the defendant wantonly, negligently and maliciously refused to deliver to him the same, and that thereby the plaintiff was not only deprived of said goods, but that his business was by such refusal seriously injured. The foundation of the action was a contract made between the plaintiff and defendant, and the breach of that contract on the part of defendant. The suit was brought for a wrong, dependent upon a contract, and the first question

we have to decide is, what is the true measure of damages in such a case. It makes no difference whether the form of the action is *ex delicto* or *ex contractu,* the real and substantial gravamen of the complaint is the alleged breach of the contract, and in such a case the same law is applicable to both classes of action. In actions like the present, against common carriers, the suit may be framed, either *ex contractu,* upon the breach of the engagement, or *ex delicto,* upon the violation of the public duty; but whether the action be *assumpsit* on the contract, or case for the violation of duty, the measure of damages is equally a question of law, and as much under the control of the Court as if the right rested in agreement merely.

There are many actions nominally in tort, which, in respect to the measure of relief, are treated as virtually *ex contractu,* and in these cases a fixed rule of damages is adhered to. 2 *Addison on Torts,* (7th *Ed.,*) 355 *and* 454.

The true measure of damages in a case like the present, has been settled by this Court in more than one case. In the case of *U. S. Telegraph Co. vs. Gildersleve,* 29 *Md.,* 232, the Court says: "Lastly, as to the measure of damages, if there be a breach of the contract. This is a subject about which there has been a considerable diversity of opinion, and great want of precision in the attempt to define rules of general application. But by the latest and best considered cases upon the subject, the rule seems to be now pretty well established, that a party can only be held responsible for such consequences as may be reasonably supposed to have been in the contemplation of both parties at the time of making the contract, and that no consequence, which is not the necessary or ordinary result of a breach, can be supposed to be contemplated, unless full information be imparted to the party sought to be held liable at the time of entering into the engagement." The Court in the same opinion, quote and adopt the opin-

ion in *Hadly vs. Boxendale,* 9 *Exch.*, 341, in which the Court said: "We think, the proper rule in such a case as the present is this—where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be, either such as may be fairly and substantially considered as arising naturally, *i. e.* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." This latter case is also adopted by this Court in the case of *The Camden Consolidated Oil Co.. vs. Schlens & Co., supra page* 31. It is equally well settled that as a general rule the measure of the damages in such cases is the value of the goods at the place of their destination, with compensation for the actual loss which is the natural and proximate consequence of the act, and excluding remote or indirect losses. 2 *Sedgwick*, 356.

The cases of *Brown & Otto vs. Werner,* 40 *Md.*, 15, and *Shaffer vs. Wilson,* 44 *Md.*, 268, are not in conflict with the cases before cited. These latter cases were for torts entirely, independent of contract, and the damages allowed were the immediate and direct consequences of the defendants' wrongful act. The interruption and injury to the trade and business of the plaintiff was the necessary and immediate consequence of the wrongful act of the defendants by their damage done to the house in which the business was carried on.

In those cases there was no contract' and consequently no breach of contract whatever. In the present case the rule is different, and the true measure of damages was the value of the goods in Baltimore on the 21st of Aug., 1880, with interest thereon, with a reasonable compensation for any expense, (if any,) which was the natural and proximate consequences of the act, excluding remote or indirect losses.

The loss sustained by the plaintiff in his general business, does not come under this rule. To be responsible for any such consequences was no part of the contract in this case, and was not for a moment contemplated by the defendants when they undertook to transport the goods from St. Louis to Baltimore.

These special circumstances now set up and relied on by the plaintiff, were wholly unknown to the defendants at the time of the contract, and it would be unjust now to hold them responsible for consequences never contemplated by them. Had the special circumstances been disclosed, the parties might have expressly provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive the defendants.

It follows from what we have said that the Court below was in error, in admitting the evidence excepted to, in defendants' bill of exceptions, and also in granting the second prayer of the plaintiff.

The other question arising in this case, was the right of the defendants to refuse to deliver the goods on the 21st of August, 1880.

Common carriers deliver property at their peril, for if delivery be to a wrong person they will be responsible to the rightful owner.

It is their duty, therefore, in all cases to be diligent in their efforts to secure a delivery to the person entitled, and they will be protected in refusing delivery, until reasonable evidence is furnished them that the party claiming, is the party entitled, so long as they act in good faith, and solely with a view to a proper delivery; but it is their duty in all cases to be diligent in their efforts to secure a delivery to the person entitled. *McEntee vs. N. J. Steamboat Co.*, 45 *N. Y.*, 34.

In this case the mark upon the goods differing from the way-bill, justified the defendants in exercising caution,

and it was a proper question to have been submitted to the jury, whether the refusal was qualified as alleged by the defendants; and if so, whether the delay in the delivery was reasonable, and caused solely by the difficulty in identifying the goods. These two facts, good faith and due diligence were questions for the jury. We think these questions were substantially submitted to the jury by the tenth prayer of the defendants, which was granted by the Court.

The defendants gave testimony tending to prove that as soon as the telegram was received from St. Louis, on 23rd of August, they notified the plaintiff, that he could get the goods, and that the goods were then in good order.

The plaintiff on the other hand, offered evidence tending to prove that he did not receive notice that he could get the goods until 26th or 27th of August, and that the goods were not then in a good condition.

In this state of the proof the jury, as they had the undoubted right to do, found a verdict for the plaintiff. This verdict we are not disposed to disturb, notwithstanding the erroneous instruction given to the jury by the granting of the second prayer of the plaintiff, as it is apparent from the record, that the defendants were not thereby injured. It is very apparent from the verdict itself that the jury did not take into consideration, in assessing the damages, any injury to the business of the plaintiff, but only gave what they considered the actual value of the goods, in Baltimore, with expenses and interest. They had before them the cost of the goods in St. Louis, and adding thereto, freight, interest, and a small sum for the difference in the price of the goods between St. Louis and Baltimore, will make the amount of their verdict.

*Judgment affirmed.*

(Decided 14th February, 1883.)