# BALTIMORE CITY COURT.

Filed March 10, 1924.

ENTERPRISE FUEL COMPANY
VS.
B. & O. RAILROAD COMPANY.

*Harry E. Karr* for plaintiff.
*Allen S. Bowie* for defendant.

DUFFY, J.—

On March 9, 1921, the P. & R. Coal and Iron Co. shipped to plaintiff a carload of anthracite white ash pea coal to be delivered at the plaintiff's Oak Street Station. The car contained 43 12/100 tons, at the mines, and on arrival at destination it was found to be 6 17/100 tons short. The car was routed by P. & R. R. and B. & O. and the freight on the whole carload was paid by plaintiff to the B. & O. Defendant admits its liability for the shortage and the sole question for determination is as to the measure of damages. The car was due to arrive at destination March 17, 1921. On that day and since then there has been no wholesale market price on anthracite in Baltimore. The defendant's contention is that it owes for the shortage the cost to the plaintiff at the mine $6.40 plus $2.94 freight plus 9 cents war tax, making $9.43 per ton, inasmuch as the freight and war tax have already been paid.

There exists in Baltimore a custom among retail coal dealers whereby one such retail dealer can obtain coal from another such dealer at $1.25 per ton less than the retail price. The cost of marketing at retail is $1.50 per ton. The plaintiff's contention is that inasmuch as it did not and could not buy 6 17/100 tons in Baltimore in open market at wholesale that it should be allowed the retail price of such anthracite which on date of delivery was $12.75 minus $1.50 marketing charge which it did not incur and minus $1.25 said reduction to one retail dealer in anthracite bought from another. The plaintiff thus claims $10 per ton for shortage as damages.

In such a suit as this one by consignee against carrier for non-delivery the general rule is that the measure of damages is the value of the goods at the place of destination, with compensation for the actual loss which is the natural and proximate consequences of the defendant's breach of contract and excluding remote or indirect losses. This, however, is subject to the general rule established in Hadley vs. Baxendale, viz: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be, either such as may be fairly and substantially considered as arising naturally, i. e., according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of *both* parties at the time they made the contract as the probable result of the breach of it.

B. & O. vs. Pumphrey, 59 Md. 400.

There being no wholesale market for anthracite in Baltimore it seems clear that for the purposes of this case the contention of the plaintiff or defendant must be adopted.

Of course the custom of retailers above mentioned cannot be considered

as establishing a market for a commodity so largely used as anthracite for it is merely a practice of accommodation among a small number of individuals in the business of distributing coal to consumers.

In the retail price of a commodity certain increments enter such as unloading, cartage, overhead and profit which should be considered as remote and indirect losses and not in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. This appears clear when we consider that this was a shipment between a buyer and a seller who deal as between themselves in carload lots only.

One of the remedies to which a consignee may resort for non-delivery by seller or carrier is to buy in the open market and make claim for the actual loss thus incurred. But where is the open market for anthracite coal in carload lots? Only at the mine or from such wholesalers as the P. & R. Coal and Iron Company. It must also be borne in mind that this carload was not bought by the plaintiff to fill certain specified retail contracts of sale so that so far as these 6 17/100 tons are concerned he had incurred no outlay for unloading, cartage or overhead and had made no retail profit. The plaintiff did not notify the carrier at the time the contract of transportation was made that this carload was intended for some particular purpose nor even that this particular carload was to be sold at retail to customers and not consumed by the plaintiff in its own use, so that defendant can be held only responsible for such consequence as may be reasonably supposed to have been in contemplation of both parties at the time of making the contract, unless full information had been imparted to the party sought to be held liable at the time of entering into the engagement.

See Pumphrey Case, p. 399; Brantly Contracts 457.

Plaintiff's counsel has referred to two cases in support of the measure of damages contended for by him; Heidritter vs. R. R. Co., Atlantic Rep. Jan. 3, 1924, and Roth Coal Co., 215 S. W. Repr. 404. In my opinion these cases do not govern here because in conflict with the rule laid down in the Pumphrey case above cited.

Defendant's counsel refers to Brown Coal Co. vs. R. R. Co., 192 N. W. Repr. 920 and cases referred to therein and Smith vs. R. R. Co., 196 N. Y. Sup. 522, in which line of cases it is held that in a case like this the retail price does not reflect the proper measure of damages suffered by the consignee for non-delivery.

I will render a verdict in accordance with defendant's contention for $58.18 with costs to defendants, a proper tender having been made.