M & R CONTRACTORS & BUILDERS, INC. *v.*
MICHAEL ET UX.

[No. 122, September Term, 1957.]

*Decided January 21, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard Paul Gilbert,* with whom were *Henry L. Rocklin, Jr.,* and *Gilbert & Rocklin* on the brief, for the appellant.

No brief and no appearance for the appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs entered by the Circuit Court for Baltimore County (Raine, J., sitting without a jury) against M & R Contractors & Builders, Inc., (M & R *or* the builder), in favor of Melvin M. Michael and Dorothy H. Michael, his wife (the Michaels *or* the owners), upon the owners' demurrer to the evidence at the close of the evidence offered by the builder. M & R appealed:

On June 10, 1955, M & R and the Michaels executed a building agreement wherein M & R agreed to erect and build a dwelling on the lot of the Michaels situated in Golf Park Acres in Baltimore County in accordance with the plans and specifications attached to the contract. The contract price

was $23,420. There was no dispute as to the execution or existence of the contract.

Apparently, when the contract was executed, the owners were financially independent and able to pay the cost of erecting the dwelling without financing. Subsequently, the builder was advised by the owners that there had been some family difficulty involving money, which made it necessary for them to obtain financing in order to proceed with the building. The builder voluntarily undertook to assist the owners to obtain financing.

Finally, in late July or early August, the owners advised the builder that they did not desire to build at that time, and asked to be released from the contract. The builder informed the owners that it preferred to wait awhile, that it did not want to cancel the contract after the preliminary work that had been done, and that it would contact the owners later. When the builder did call sometime later, it was again advised that the owners did not want to proceed with the contract, whereupon M & R filed suit against the Michaels for the contract price. Of this amount $20,020 represented the cost and $3,400 was the anticipated profit.

The builder admitted that the only work it had done consisted of preparing the contract, studying the plans, obtaining estimates from sub-contractors, submitting an estimate of the contract price, and assisting the surveyor in clearing the lot on which the dwelling was to be built. The aid to the surveyor was considered to be a gratuity. The builder never began excavating or laid out any money for building materials, and had not signed any contracts with sub-contractors. And it made no claim for any of the services it had rendered. At the trial of the case M & R abandoned the attempt to recover the estimated cost of the building and sought to recover only the anticipated profit. Only two witnesses were produced, the president and secretary-treasurer of the corporation. There was no direct evidence describing the method by which the anticipated profits were arrived at other than what was described as the standard procedure of totaling the estimates of the sub-contractors and deducting such total from the quoted contract price, and thereby arrive

at the estimated profit. There was no evidence of how the contract price was arrived at after the total cost had been assembled.

At the close of the evidence offered by M & R the Michaels moved for a directed verdict. What they should have done was to have moved "for a dismissal on the ground that upon the facts and the law * * * [M & R had] * * * shown no right to relief", pursuant to Maryland Rule 565 (Demurrer to Evidence). However, the error was not fatal. Judge Raine properly treated the motion as a demurrer to the evidence, which it was, instead of as a motion for a directed verdict.

After the motion for a dismissal had been made, the trial judge made the following significant comment: "* * * I think you have * * * shown a contract and a breach of contract. What worries me is the question of damages * * *." Obviously, he based his decision to grant the motion for dismissal and enter a judgment for costs in favor of the owners on his belief that the builder failed to prove "any loss of profits with reasonable certainty". He then went on to explain what he understood "reasonable certainty" to mean. Previously in his colloquy with counsel for the parties, the trial judge had stated that in his opinion the "loss of profits * * * [was] so highly speculative that the court cannot predicate a verdict on that". For this reason he concluded that he should find for the owners by granting their motion for a dismissal.

The appeal presents two questions: (i) Was it error to grant the motion for dismissal?; and (ii) If the builder is entitled to anything more than nominal damages for the breach of its contract, what is the measure of such recoverable damages?

There is no doubt that the granting of the motion for a dismissal was reversible error. We think it is clear that the trial court should have overruled the motion, and required the owners, if they desired to defend, to offer evidence (i) of such defenses as they may have had to the alleged breach of the contract, and (ii) such as they may have had in mitigation of such damages as may have been proven. We think

it is also clear, from the evidence produced at the partial trial of the case, that the damages proven are not so speculative as to be wholly non-compensatory, and further, that the trial court *must assess some damages,* nominal or substantial, as it shall find to be proper on the law and all of the evidence when it shall have been produced at a retrial. Therefore, we will reverse the judgment for costs and remand the case for a new trial.

Ordinarily we would conclude our opinion at this point, but in some instances it is appropriate that we proceed further. Maryland Rule 885 (Scope of Review—Limited to Questions Decided by Lower Court) provides in part that: "* * * where a point or question of law is presented to the lower court and a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court, such point or question of law may be decided by this Court even though not decided by the lower court. * * *." We believe it is desirable in this case to review the point or question of law pertaining to the measure of damages when a claim therefor is based on loss of profits.[1] Such review will include a brief analysis of the comments on and discussions of the questions found in (i) the law reviews, journals and textbooks on the subject of contracts and damages for the breach thereof; (ii) the authorities on damages for the breach of construction contracts; (iii) the Maryland decisions; (iv) the decisions directly in point in other jurisdictions; and (v) a brief summary concerning minimization of damages.

(i)

Three specific rules have been developed to limit the recovery of unrealized profits: (i) a plaintiff must show that a breach by a defendant was the cause of the loss; (ii) damages may not be awarded unless, when the contract was exe-

---

1. For a thorough comment with respect to lost profits as contract damages, and an analysis of the problems of proof and limitations on the recovery thereof see the article entitled *"Lost Profits as Contract Damages: Problems of Proof and Limitations on Recovery"*, in 65 Yale L. J. 992 (1956).

cuted, the defendant could have reasonably foreseen that a loss of profits would be a probable result of a breach; and (iii) lost profits may not be recovered unless they can be proved with "certainty". The familiar "foreseeability" rule, enunciated in *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), was adopted in Maryland in *U. S. Telegraph Co. v. Gildersleve,* 29 Md. 232 (1868). See also *B. & O. R. R. v. Pumphrey,* 59 Md. 390 (1883), and *McCormick, Damages,* Sec. 138 (1935). Depending on the factual situation presented, courts have applied the aforementioned rules with varying degrees of strictness.

Ordinarily cases involving this subject fall into two distinct factual categories: (i) cases where the injured party is a *seller* of something—he may be a farmer selling produce, a manufacturer selling a product, a merchant selling goods, wares and merchandise, or a building contractor selling both materials and services—and the defendant has breached his contract to *buy;* and (ii) cases where the injured party is a *buyer* of something which he plans to *resell,* either directly, as a middleman, or as a manufacturer, in a transaction collateral to his contract with a supplier. In the *second category* a plaintiff seeks recovery of collateral profits which he had lost. In such cases a failure to deliver, delivering late or delivering unusable goods, if the plaintiff is unable to obtain substitutions promptly from another supplier, might delay the collateral transaction, frustrate it, or increase its cost, and may indeed cause the loss of a customer. However, in such instances the loss of profits is collateral, not direct, and more stringent proof of loss by the *buyer* is required than is demanded of a *seller.* To meet the demands of the "certainty" rule, a *buyer* for resale must introduce detailed evidence of the number of sales lost, the prices which might have been obtained, and the costs of reselling. In the *first category,* into which the case at bar falls, the plaintiff seeks recovery of direct profits which it has lost. In such cases the loss of profits is generally measured by the difference between the contract price and the actual or estimated costs of full performance. In such instances the proof requirements are not as strict, and courts have universally held that a defendant bargaining

with a businessman should necessarily foresee that the prospect of the *seller* making a profit was the reason he entered into the contract, thus satisfying the "foreseeability" rule.

As Corbin points out a plaintiff must lay a basis for a "reasonable estimate" of the extent of his harm, measured in money, but the application of a test such as "reasonableness" is subject to a high degree of variability. 5 *Corbin, Contracts,* (1951), Sec. 1020 (Degree of Certainty Required in Proof of Damages). Furthermore, in Sec. 1022 (Uncertainty of Amount of Harm—Speculative and Uncertain Profits) Corbin says: "If the breach is such as to prevent performance by the plaintiff he has a right to the price diminished by the costs of that performance that he has saved. * * * It is often stated as a rule of law that speculative and uncertain profits are not recoverable as damages for breach of contract." And, after discussing an example of collateral profits, *i. e.,* where plaintiff is a *buyer,* not a *seller,* Corbin continues:

> "It is to profits such as these claimed on evidence little more substantial, that courts commonly refer when they lay down the rule that speculative and uncertain profits are not recoverable as damages. There is no rule of law, and never has been, that profits in general cannot be recovered."

And as to direct profits, he states:

> "Profits that would have been but for the defendant's breach are frequently held not to be too uncertain or speculative for proof, when they are the profits that would have resulted immediately from the performance of the contract broken. The plaintiff is less likely to be permitted to show that the breach has caused him to be unable to make or perform other contracts collateral to the one broken, contracts to which the defendant was not himself a party. The profits from these contracts may be regarded as too remote or too speculative."

Corbin then goes on to discuss the meaning of the term

"speculative and uncertain profits". The term is not really a classification of a kind or a type of profit, but instead it is:

> "* * * a characterization of the *evidence* that is introduced to prove that they would have been made if the defendant had not committed a breach of contract. The law requires that this evidence shall not be so meager or uncertain as to afford no reasonable basis for inference, leaving the damages to be determined by sympathy and feelings alone. The amount of evidence required and the degree of its strength as a basis of inference varies with circumstances." (Emphasis added.)

> "It is not possible to state the precise degree of approach to certainty required for the recovery of profits as damages for breach of contract. If the mind of the court is certain that profits would have been made if there had been no breach by the defendant, there will be a greater degree of liberality in allowing * * * a verdict for the plaintiff, even though the amount of profits prevented is scarcely subject to proof at all. In this respect, at least, doubts will generally be resolved in favor of the party who has certainly been injured and against the party committing the breach."

And see the cases cited at notes 90 and 91, especially the discussions of *Jaffe v. Alliance Metal Co.,* 337 Pa. 449, 12 A. 2d 13 (1940), and *Crichfield v. Julia,* 147 F. 65 (2d Cir. 1906).

Courts have modified the "certainty" rule into a more flexible one of "reasonable certainty". In such instances, recovery may often be based on opinion evidence,[2] in the legal sense of that term, from which liberal inferences may be drawn. Generally, proof of actual or even estimated costs is all that is required with certainty.

---

2. Opinion evidence is that which is given by a person of ordinary capacity who has by opportunity acquired a particular knowledge outside of the limits of common observation.

Some of the modifications which have been aimed at avoiding the harsh requirements of the "certainty" rule include: (a) if the fact of damage is proven with certainty, the extent or the amount thereof may be left to reasonable inference; (b) where a defendant's wrong has caused the difficulty of proving damage, he cannot complain of the resulting uncertainty; (c) mere difficulty in ascertaining the amount of damage is not fatal; (d) mathematical precision in fixing the exact amount is not required; (e) it is sufficient if the best evidence of the damage which is available is produced; and (f) the plaintiff is entitled to recover the value of his contract as measured by the value of his profits. *McCormick, Damages,* Sec. 27 (1935). See also Note, *"Speculative Profits as Damages for Breach of Contract",* 46 Harv. L. Rev. 696 (1933), which states that "the last hundred years have witnessed continual modification of the once rigid rule that anticipated profits, because inherently uncertain, were *per se* not a proper element of damages for breach of contract."

(ii)

With respect to damages for the breach of a building contract see 5 *Corbin, Contracts,* Sec. 1094 (1951), and 5 *Williston, Contracts,* Sec. 1363 (Rev. ed. 1937). *Corbin* states:

"Full performance of the construction contract by both parties would have left the building contractor in possession of the full contract price, less the entire cost of construction required of him by the contract. To put him in as good a position as this, in case of a breach by the defendant, it is necessary to let the building contractor get judgment for the full amount of the contract price promised, diminished by the amount that is saved to the building contractor by reason of his not having to complete the construction. The amount thus saved by reason of the defendant's breach is the cost of completion by the building contractor himself under the circumstances that existed at the time of the breach."

In *McCormick, Damages,* Sec. 164 (1935), it is stated that where the owner—

> "* * * renounces the contract before the builder has entered upon the work or preparation thereof, the builder recovers the loss of the expected profit, namely, the difference between the agreed price and what it would cost the builder to carry out his bargain."

In 6 *Page, Contracts,* Sec. 3215 (2d ed. 1922), it is said:

> "If the party for whom the work is to be performed renounces the contract or otherwise prevents the contractor from performing, the measure of damages is said to be the contract price less the cost of completing the performance of such contract. * * * The fact that it is not possible to ascertain with absolute accuracy the cost of completing the contract does not prevent this measure of damages."

Also, in 2 *Sedgwick, Damages,* Sec. 614 (9th ed. 1912), it is said:

> "Where a contract price is fixed in the contract, this becomes the standard of value of the contract, the profit being the difference between the contract price and the cost or value of performance."

See also Professor Patterson's discussion of a contractor's damages in the article entitled *"Builder's Measure of Recovery for Breach of Contract",* 31 Colum. L. Rev. 1286 (1931), and *Restatement, Contracts,* Sec. 346 (1932). Damages for Breach of a Construction Contract, Subsection (2)(a), states:

> "* * * if it is a total breach he [the builder] can get judgment * * * for * * * the entire contract price and compensation for unavoidable special harm that the defendant had reason to foresee when the contract was made, less installments already paid

and the cost of completion that the builder can reasonably save by not completing the work."

See also comments g. and h. to Sec. 346.

(iii)

The Maryland cases on the question of loss of profits are in accord with the statements of law writers and the comments in law journals and reviews, some of which have been cited or referred to herein, in that such cases also emphasize the now familiar dichotomy of *direct* and *collateral* profits. In the decisions in which plaintiffs were allowed to recover *direct* profits they had lost, we have consistently stated that the measure of damages is the difference between the price specified in the contract and what it would have cost the plaintiff to do, or to complete, the work he had undertaken to perform. *Eckenrode v. Chem. Co. of Canton,* 55 Md. 51 (1880); *B. & O. R. R. v. Brydon,* 65 Md. 198, 3 A. 306 (1886); *B. & O. R. R. v. Stewart,* 79 Md. 487, 29 A. 964 (1894); *Bush v. Balto. & Catonsville Construction Co.,* 88 Md. 665, 41 A. 1092 (1898); *Kahn v. Carl Schoen Silk Corp.,* 147 Md. 516, 128 A. 359 (1925); and *Laporte Corp. v. Pennsylvania-Dixie Cement Corp.,* 164 Md. 642, 165 A. 195 (1933). In the *Stewart* case, *supra,* in which the plaintiffs contracted to furnish the materials and to do the masonry work on a bridge, the railroad company terminated the contract after work had begun on the ground that the contract permitted the company to do so upon proper notice. Although it subsequently developed that sufficient notice had not been given, nevertheless, the company insisted that since the plans for the bridge were subject to alteration at the will of its chief engineer, such alterations might have changed the quality of the work to be done and the consequent profits: Because there was no evidence to show that an alteration was likely to occur, we stated, after prescribing the measure of damages, at p. 500, that:

"* * * even if the plans were changed, the possibility that such alterations might affect the profits of the plaintiffs would not disentitle them from re-

covering profits estimated according to the plans agreed upon. They might not be able to prove with *absolute* certainty what their profits would have been. But the law does not require them to prove such profits with absolute certainty. All they were required to prove was that the profits claimed were *reasonably certain* to have been realized but for the wrongful act of the defendant."

For cases in which plaintiffs were not allowed to recover *collateral, estimated* and *probable* profits claimed to have been lost see *Abbott v. Gatch,* 13 Md. 314 (1859), *Wood v. State, use of White,* 66 Md. 61, 5 A. 476 (1886), *Crabbs v. Koontz,* 69 Md. 59, 13 A. 591 (1888), *Central Trust Co. v. Arctic Ice Machine Co.,* 77 Md. 202, 26 A. 493 (1893), *Lanahan v. Heaver,* 79 Md. 413, 29 A. 1036 (1894), *Winslow Elevator Co. v. Hoffman,* 107 Md. 621, 69 A. 394 (1908), and *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901 (1955). Compare *Equitable Gas Light Co. v. Baltimore Coal Tar & Mfg. Co.,* 65 Md. 73, 3 A. 108 (1886), in which a middleman was allowed to recover collateral profits he could have made on a resale of goods bought but not delivered. And see *B. & O. R. R. v. Pumphrey, supra,* which was decided on the basis that the "foreseeability" rule prevented recovery. In the *Lanahan* case, *supra,* the Court pointed out the distinction between direct and collateral profits at p. 418, saying:

"* * * it may be said that wherever it is reasonably certain or apparent that profits would have been realized had the contract been completed according to its terms, * * * and are the direct and immediate fruits of the contract, * * * such profits * * * are a legitimate element of damages; but whenever it is purely problematical whether any profits would have been realized at all, by reason of contingencies which might never happen, or where the profits have reference to dependent and collateral engagements entered into on the faith of the performance of the principal contract, [such] * * *

probable profits cannot be recovered, because [they are] too speculative, indefinite, and remote."

(iv)

The decisions in other jurisdictions, directly in point, are of the same or a similar tenor. The leading, and most frequently cited, American case involving damages for lost profits is *Masterton v. Mayor of Brooklyn, 7* Hill 61 (N. Y. 1845). In that case a plaintiff contracted to procure and deliver all of the marble necessary for a public building. The city breached the contract after work had begun. The Court pointed out the distinction between collateral and direct profits, saying:

"When the [authorities] * * * speak of the profits anticipated from a good bargain as matters too remote and uncertain to be taken into account in ascertaining the true measure of damages, they usually have reference to dependent and collateral engagements entered into on the faith and in expectation of the performance of the principal contract * * *. But [such engagements are] * * * too remote and subtile to be reached by legal proof or judicial investigation. * * *

"But profits * * * which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. * * * They are presumed to have been taken into consideration and deliberated upon before the contract was made, * * *."

On the measure of damages the Court stated:

"Where the article has no market value, an investigation into the constituent elements of the cost to the party who has contracted to furnish it, becomes necessary; and that, compared with the contract price, will afford the measure of damages."

In *Joske v. Pleasants,* 15 Tex. Civ. App. 433, 39 S. W. 586 (1897), in which the owner breached a building contract

before any work had begun, and in which the plaintiff and another witness, both of whom were experienced contractors with a special knowledge of cost in the building field, testified as to the estimated cost, the lost profits were measured by the difference between the contract price and costs. The Court said: "The damages flowing from the breach of a building contract have never in any well-considered case been held too remote or uncertain to be recovered. If either party breaks such a contract, the other is entitled to recover what he would have made or saved had it been performed." The defendant contended that certain risks peculiar to a builder should lessen the amount of profits, but as to this the Court also said:

"All the risk incurred was estimated, considered, and guarded against by the plaintiff in his bid; and, after having been so estimated and considered, to have again deducted the 'value of such risk' would have been to make a double deduction for such risk. * * * [Furthermore] the relief from anxiety and worry that may have been incurred by a builder from not having been permitted to perform his contract can [not] be considered in mitigation of damages * * *. Such consideration would inject a question, and beget others, too uncertain and remote for determination."

And see *Jenkins v. Charleston St. Ry.*, 58 S. C. 373, 36 S. E. 703 (1900), and, particularly, *Bromley v. Heffernan Engine Works*, 108 Wash. 31, 182 P. 929 (1919), in which a novel manner of proving costs was permitted. See also, *Danolds v. State of New York*, 89 N. Y. 36 (1882), and *McConnell v. Corona City Water Co.*, 149 Cal. 60, 85 P. 929 (1906).

(v)

With respect to minimization of damages, the ordinary rule is that damages are not recoverable if the consequences of a breach are avoidable. In other words, a plaintiff is not entitled to a judgment for damages for a loss that he could have avoided by a reasonable effort without risk of additional loss

or injury. Likewise, gains that he could have made by a reasonable effort, without risk of loss or injury, by reason of opportunities he would not have had but for the other party's breach, are deductible from the amount he is otherwise entitled to recover. However, gains made by an injured party on other transactions after a breach should never be deducted from damages otherwise recoverable, unless such gains could not have been made had there been no breach. 5 *Corbin, Contracts,* Secs. 1039 and 1041. On the other hand, if a plaintiff could *not* have worked on another job or project unless he had been discharged from the performance of the defendant's contract, then the gains from the other employment or undertaking must be deducted from the plaintiff's damages. Essentially, the inquiry is whether the plaintiff's employment or undertaking was of a personal nature. However, a building contractor normally has more than one project in progress at the same time. If he has, then his contracts for services to be performed are not personal. Thus, Professor Patterson, who made a detailed study of building contracts, which he set forth in his article published in 31 Colum. L. Rev., *supra,* had this to say at p. 1306:

> "The builder's gain from another contract which he took on immediately after the owner's repudiation will not be considered in reducing his recovery of full damages (including profits) for breach of contract. As an enterpriser, the builder may take on an indefinite number of contracts and make a profit on all of them."

Cases in which this problem was considered include *Ross v. Columbus Mining Co.,* 204 Ky. 474, 264 S. W. 1071 (1924); *Hollerbach v. Wilkins,* 130 Ky. 51, 112 S. W. 1126 (1908); *Olds v. Mapes-Reeves Construction Co.,* 177 Mass. 41, 58 N. E. 478 (1900); *Sullivan v. McMillan,* 37 Fla. 134, 19 So. 340 (1896); *Graves v. Hunt,* 8 N. Y. St. Rep. 308 (1887); and *Nilson v. Morse,* 52 Wis. 240, 9 N. W. 1 (1881), in which it was held that building contracts do not ordinarily require the rendition of personal services. Spe-

cifically, with regard to building contracts, *Corbin* states at note 36, Section 1094:

> "* * * the owner is not entitled to deduct from the contract price any profits that the plaintiff may have made on other contracts obtained or performed by him after the repudiation by the owner of the contract sued on. * * * It would hardly ever be possible for the defendant to prove that but for his repudiation the other contracts could not have been obtained or performed. This proof would be necessary in order to justify such a deduction."

In any event the burden of proving that losses could have been avoided by reasonable effort and expense is upon the party who broke the contract. *Corbin, Contracts,* Section 1039, *supra.*

Of course, if the owners in the instant case can show that their contract with M & R was such as to require the builder's entire time and attention so that their breach made it possible for the builder to undertake another project, then the actual gain made under the substituted contract must be considered in measuring the damages to which the builder is entitled. See *DeMoss v. Beryllium Corp.,* 358 Pa. 470, 58 A. 2d 70 (1948). See also *Restatement, Contracts,* Sec. 346 (1932), Comment f.

*Judgment reversed, and case remanded for a new trial, not in conflict with the point or question of law herein reviewed, the appellees to pay the costs.*