JOHN D. COPANOS & SONS, INC. *v.* McDADE
RIGGING AND STEEL ERECTION
COMPANY, INC. ET AL.

[No. 1390, September Term, 1978.]

*Decided July 13, 1979.*

The cause was argued before THOMPSON, LISS and COUCH,
JJ.

*Jerald J. Oppel* and *Pamela J. White,* with whom were *Ober,
Grimes & Shriver* on the brief, for appellant.

*Emanuel H. Horn* and *John E. Mudd,* with whom were *Gary
C. Duvall* and *Miles & Stockbridge* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

This appeal requires us to decide when a business concern may recover lost profits in an action based on negligence, breach of contract, breach of warranty, and strict liability. On the one hand, John D. Copanos & Sons, Inc., the business concern and appellant, urges that any lost profits which can be shown with reasonable certainty may be recovered. On the other hand, McDade Rigging and Steel Erection Company, Inc., and Rental Tools and Equipment Company, Inc., appellees, contend that lost profits allegedly suffered by a "new" business may not be recovered. It is their position that appellant's venture in this case was new, hence it may not recover any such lost profits. The trial court agreed with appellees and from that ruling this appeal flows.

## The Facts

Appellant has been a manufacturer of pharmaceuticals since 1963, and has apparently enjoyed steadily increasing profits on the manufacture and sale of pharmaceuticals in liquid, tablet, and powder form. Included among the pharmaceuticals appellant produces are various types of penicillin. In 1972 appellant purchased a Zanasi capsule machine to be used in the production of capsuled pharmaceuticals, specifically ampicillin, a form of penicillin. Having decided to move certain of the equipment within its plant, appellant contracted with appellee McDade to move the equipment, which included moving the Zanasi machine from the first floor to the second floor. While on the first floor, the machine had been operated, tested, finely tuned, and made ready to begin commercial production of ampicillin capsules immediately upon its placement on the second floor. On October 2, 1973, McDade prepared the capsule machine for removal to the second floor by positioning it on a forklift rented to McDade by appellee Rental. The machine was raised to a height of five to eight feet; the forklift then pitched forward against a wall of the plant destroying the capsule machine and causing other damage, not pertinent here. Search for a replacement machine was instituted but because of its foreign manufacture and the limited number of Zanasi machines in existence, it was not until December 31, 1973 that

another machine could be purchased, installed, tested, and made fully operational. Appellant proffered that during this period certain customers cancelled their firm orders and did not fulfill their intentions to order large quantities of ampicillin capsules. Suit was filed in the Superior Court of Baltimore City where, prior to trial, appellee Rental moved the court to restrict appellant's evidence of consequential damages by eliminating evidence of lost profits from the case. After a hearing, during which appellant made a proffer as to the evidence it was prepared to offer with regard to lost profits, the trial court granted appellee Rental's motion.

Following the receipt of evidence, a jury awarded appellant the amount of $50,019.49 against both appellees. This amount, of course, does not encompass any "lost profits" award.

## The Contentions

Appellant contends that lost profits which can be shown with reasonable certainty, and are not speculative or conjectural, should be recoverable if they were foreseeable. Appellees urge that lost profits from a new business or venture simply are not recoverable under Maryland law and that, in any event, lost profits in this case were not foreseeable and are thus not recoverable.

## The Law

It seems well settled in this State that there may be a recovery for unrealized profits providing (1) plaintiff shows that a breach by a defendant was the cause of the loss; (2) it is shown that defendant could have reasonably foreseen that a loss of profits would be a probable result of a breach; and (3) the lost profits are proved with reasonable certainty. See *Impala Platinum v. Impala Sales,* 283 Md. 296, 339, 389 A. 2d 887 (1978), and *M & R Builders v. Michael,* 215 Md. 340, 345-46, 138 A. 2d 350 (1958). There appears to be a caveat to this rule in the case of a new business, however, which appellees and the trial court felt was dispositive. This caveat

was examined in detail by the Court of Appeals in *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A. 2d 901 (1955), where it was said:

> "We think the court did not err in refusing the proffered evidence. Under the great weight of authority, the general rule clearly is that loss of profit is a definite element of damages in an action for breach of contract or in an action for harming an established business which has been operating for a sufficient length of time to afford a basis of estimation with some degree of certainty as to the probable loss of profits, but that, on the other hand, loss of profits from a business which has not gone into operation may not be recovered because they are merely speculative and incapable of being ascertained with the requisite degree of certainty. *Restatement, Contracts,* Sec. 331, states the law to be that damages are recoverable for profits prevented by breach of contract 'only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty', and that where the evidence does not afford a sufficient basis, 'damages may be measured by the rental value of the property.' Comment 'd' says this: 'If the defendant's breach has prevented the plaintiff from carrying on *a well-established business,* the amount of profits thereby prevented is often capable of proof with reasonable certainty. On the basis of its past history, a reasonable prediction can be made as to its future.' (italics supplied) That damages for profits anticipated from a business which has not started may not be recovered, is laid down in 25 C.J.S., *Damages,* Sec. 42, and 15 Am. Jur., *Damages,* 157; 5 Corbin, *Contracts,* Sec. 1022, 1023; 1 A.L.R. 156; 99 A.L.R. 938. See also *The Requirement of Certainty for Proof of Lost Profits,* 64 Harvard Law Review 317. The article discusses the difficulties of proving with sufficient certainty the profits which were lost, and

then says: 'These difficulties have given rise to a rule in some states that no new business can recover for its lost profits.' While this Court has not laid down a flat rule (and does not hereby do so), nevertheless, no case has permitted recovery of lost profits under comparable circumstances."

*Id.* at 618-19. Thus the Court of Appeals has not entirely foreclosed the possibility that lost profits can be recovered by an established firm embarking on a new method of manufacture. Whether the caveat is even applicable here seems debatable since it is arguable that the encapsulating process of a form of penicillin, which appellant has produced in other forms for years, is not a "new business". We believe each case must be judged on its facts and thus it was error for the trial court to grant the motion restricting the evidence which would have developed those facts. The real concern in considering lost profits as an element of damages is not whether the business is old or new, but rather whether anticipated profits can be shown with reasonable certainty so that the evidence rises above speculation or conjecture.

The question here, then, is whether appellant's proffer meets the three part test of *M & R Builders, supra,* bearing in mind the fact that the Zanasi machine had never started commercial production. The trial judge, in granting appellee Rental's motion restricting the evidence of lost profits, based his decision primarily on the "new business" rule, but there was also an implicit finding that appellees could not have foreseen a loss of profits and that the proffer contained "much vagueness, speculation, and expectations." While we are mindful of Md. Rule 1086, we believe the proffer was sufficient to rise above speculation and conjecture and that the court erred in limiting the evidence. The proffer, as shown by the record, was to the effect that appellant would offer evidence to show:

1) that it had been in business as a manufacturer of pharmaceuticals since 1963, with its profits increasing yearly;

2) that it had an agreement with McDade to move the capsule machine;

3) McDade and Rental both were aware that appellant was in the pharmaceutical manufacturing business;

4) McDade knew the machine to be moved was a capsule making machine;

5) McDade and Rental both saw the plant in operation producing pharmaceuticals;

6) the machine was destroyed in the process of moving it;

7) appellant had contracts for the sale of encapsulated ampicillin and, following the accident, the contracts were cancelled;

8) the cost of producing the capsules was established in detail;

9) the sales price and contracts for sale were established in detail; and

10) that after a new machine was obtained and put into operation (after 52 days), 10% of the plant was set aside for the production of ampicillin.

Appellees contend that they could not have foreseen a loss of profits to appellant. The Court of Appeals in *M & R Builders, supra,* discussed the foreseeability problem with respect to a buyer and seller. What was said concerning the buyer applies with equal force to appellant's situation:

"Ordinarily cases involving this subject fall into two distinct factual categories: (i) cases where the injured party is a *seller* of something — he may be a farmer selling produce, a manufacturer selling a product, a merchant selling goods, wares and merchandise, or a building contractor selling both materials and services — and the defendant has breached his contract to *buy*; and (ii) cases where the injured party is a *buyer* of something which he plans to *resell,* either directly, as a middleman, or as a manufacturer, in a transaction collateral to his contract with a supplier. In the *second category* a plaintiff seeks recovery of collateral profits which he

had lost. In such cases a failure to deliver, delivering late or delivering unusable goods, if the plaintiff is unable to obtain substitutions promptly from another supplier, might delay the collateral transaction, frustrate it, or increase its cost, and may indeed cause the loss of a customer. However, in such instances the loss of profits is collateral, not direct, and more stringent proof of loss by the *buyer* is required than is demanded of a *seller*. To meet the demands of the 'certainty' rule, a *buyer* for resale must introduce detailed evidence of the number of sales lost, the prices which might have been obtained, and the costs of reselling. In the *first category*, into which the case at bar falls, the plaintiff seeks recovery of direct profits which it has lost. In such cases the loss of profits is generally measured by the difference between the contract price and the actual or estimated costs of full performance. In such instances the proof requirements are not as strict, and courts have universally held that a defendant bargaining with a businessman should necessarily foresee that the prospect of the *seller* making a profit was the reason he entered into the contract, thus satisfying the 'foreseeability' rule." Id. at 346-47.

The mere circumstance that more stringent proof is required where the anticipated profits stem from collateral transactions does not warrant a prohibition on such proof. We believe that the proffer, if supported by evidence, would be sufficient to warrant submitting the issue to the jury as it meets the three criteria set out in *M & R Builders, supra*. We are not to be understood to say appellant must prevail on this issue, only that appellant should be given an opportunity to · put on its proof and, if the proffer is proved, that the issue is one for determination by the jury.

> *Judgment reversed.*
> *Case remanded for a new trial as to damages only.*
> *Costs to be paid by appellees.*