748 A.2d 1015

**John W. STROH, et ux.**

v.

**OMNI ARABIANS, INC.**

**No. 841, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

March 29, 2000.

Arthur W. Boyce, Frederick, for appellants.

Harry T. DeMoll, Frederick (Mary Ann Ferguson, Walkersville, on the brief), for appellee.

Argued before HOLLANDER, SALMON and SONNER, JJ.

SALMON, Judge.

The main question we are required to answer in this appeal is the following:

Were late fees charged by the plaintiff-appellee unenforceable penalties under Maryland law?

We answer that question in the affirmative, based on the recent case of *United Cable Television of Baltimore Ltd. Partnership v. Burch,* 354 Md. 658, 732 A.2d 887 (1999).

### FACTS [1]

Omni Arabians, Inc. ("Omni") is a small, family-run Pennsylvania corporation that provides veterinarian and equestrian services to its customers. At the time of trial, Steven Dady was president of Omni, and his mother, Barbara Dady, was the corporate bookkeeper and treasurer.

Dr. John W. Stroh and his wife, Vicky, at all times here pertinent, owned Arabian horses. Beginning in the 1970's, the Strohs boarded some of their horses at a farm owned and operated by Omni and used Omni to show their Arabian horses at various equestrian events. Costs connected with the services rendered by Omni were written off by Dr. Stroh as business expenses for Internal Revenue purposes.

No written contract existed between Omni and the Strohs. Instead, Omni would bill the Strohs each month for services rendered. The Strohs were irregular in their payments of Omni's bills, however, and interest was charged on the monthly balances "two or three times a year" in 1989 and a "couple of times before that." When the Strohs made payments on

---

1. The facts are set forth in this opinion in the light most favorable to Omni Arabians, Inc., the prevailing party below. *See* Md. Rule 8–131(c).

their bill, Omni's bookkeeper would deduct the payments from the total balance due, which meant, in effect, that Omni applied payments to interest first and the remainder was applied to the outstanding balance on the open account.

In January 1990, Barbara Dady ("Ms. Dady") took over as bookkeeper for Omni. Starting on January 25, 1990, invoices sent to the Strohs by Omni had the following message typed, in capital letters, on the bottoms of the invoices: "AC-COUNTS NOT PAID WITHIN THIRTY DAYS SUBJECT TO 2% PER MONTH SERVICE CHARGE" (hereafter "the late fee"). As of January 25, 1990, the balance on the open account owed by the Strohs was $14,146.31. The first month (after the January 25, 1990, notification) that a late fee was actually imposed was May 1990, when a charge of $260.42 was added by Omni. Thereafter—the record does not show when—Dr. Stroh "protested" the late fees. Nevertheless, the Strohs continued to board from one to five of their Arabian horses at the Omni farm and continued to use Omni's services in connection with those horses. Moreover, the Strohs continued to make regular payments on their bills. Between May 1990 and December 31, 1990, for instance, the Strohs made payments to Omni that varied between $1,600 and $3,600 monthly.

In the thirty-seven months between May 1990 and July 1993, the two percent per month late fee was charged by Omni thirty-two times. On July 27, 1993, Omni unilaterally changed the late fee to one and one-half percent per month. Starting with the July 27, 1993, invoice, a notation on all invoices sent to the Strohs read:

ACCOUNTS NOT PAID WITHIN 30 DAYS SUBJECT TO 1½% PER MONTH SERVICE CHARGE.

From July 27, 1993, until May 1997—when suit was brought by Omni—late fees at the annual rate of eighteen percent were imposed on most monthly invoices; however, on ten invoices no late fee was charged.

Ms. Dady explained at trial that, on some occasions, late fees were not imposed due to inadvertence on her part.

There were occasions, however, when she purposefully did not impose the late fee because she "thought that they were going to be settling the account and I thought it was going to be taken care of." The Strohs made payments on the open account until November 1996 when they stopped. Nevertheless, the Strohs continued to board at least one of their Arabian horses at Omni's farm until May 1997, at which time, according to Omni's billing statement, the Strohs owed $31,843.57 to Omni.

Omni's records show that from January 25, 1990, until May 1997, Omni charged the Strohs a total of $106,657.98, of which $20,344.72 was for late fees. As already mentioned, as of January 25, 1990, there was a balance of $14,146.31 owed. Between January 25, 1990, and May 1997, the Strohs paid $88,960.92 on their Omni account—leaving a balance of $31,843.37 [2] owing—if the late fees were appropriately charged.

Omni filed an amended complaint in the Circuit Court for Frederick County against the Strohs on July 23, 1997. Omni alleged that the Strohs owed it $31,843.37, plus interest and costs on an open account. After an answer was filed by the Strohs, a bench trial was held. The principal issue presented to the trial judge was whether the Strohs had accepted Omni's offer to provide services to them, in exchange for which Omni expected to be compensated for their services and paid a late fee if its bills were not paid within thirty days. In regard to this issue, the court reached the following conclusions:

> In April 1990 the [p]laintiff presented the [d]efendants an invoice and gave notice of a finance charge on any outstanding balances. The [d]efendants continued to receive services from the [p]laintiff, knowing of [p]laintiff's offer to extend and continue credit conditioned on payment of the finance charge. Thus a contract was created by Dr. Stroh's acceptance of Omni Arabian's proposed manner of doing business. That manner of doing business went on for six

---

**2.** $106,657.98 plus $14,146.31, equals $120,804.29; $120,904.29 less $88,960.92, equals $31,843.37.

years. Dr. Stroh is bound by the terms of the invoice and is therefore fully liable for the amount remaining.

In accordance with his ruling, the trial judge entered judgment against the Strohs in favor of Omni in the amount of $31,843.37, plus interest of $4,060[3] and costs. This timely appeal followed.

On appeal, the Strohs present five issues, which we have reordered:

1. Whether the trial court erred in finding that there was an acceptance by the Strohs to the "finance charge" and that, therefore, an implied-in-fact contract [existed] between the parties regarding the payment of "finance charges[.]"

2. Whether the [p]laintiff, Omni, met its burden of proof to substantiate the amount claimed to be owed[.]

3. Whether the trial court erred in not finding that the "finance charges" assessed to the Stroh[s'] account were improper under Md. Com. Law Ann. § 12–501, *et seq.*

4. Whether the trial court erred in not finding that the "finance charge" unilaterally imposed was an unenforceable penalty and, therefore, an improper charge[.]

5. Whether the trial court erred in not finding the imposition of the "finance charge" was in violation of the Federal truth in lending law[.]

Issue 5 was not raised in the lower court and therefore was not preserved for appellate review. *See* Md. Rule 8–131(a). Issues 1 and 3 are moot in view of our answer to Issues 2 and 4.

### A.

### ISSUE 2

■ Appellants contend that Omni did not meet its burden of proof to substantiate the amounts claimed to be owed.

---

**3.** Interest was calculated at 18% per year on $31,843.37 from date suit was brought on May 28, 1997, until judgment was entered on February 6, 1998.

According to appellants, Omni could not "explain the nature or basis for the original balance stated on the January 1990" invoice. We disagree.

An invoice introduced by Omni showed that as of January 25, 1990, appellants owed it $14,146.31. At trial, it was undisputed that the parties had a twenty-year relationship during which the Strohs boarded horses at Omni's farm and received equestrian services. Both parties also agreed that, during most of the twenty-year period, the appellants were regularly in arrears in payment for the services rendered. No evidence was presented that the Strohs ever protested the January 25, 1990, invoice or ever claimed prior to trial that $14,146.31 was not owed as of January 25, 1990. Although Omni's bookkeeper admitted that in 1989 the Strohs had been charged for interest "two or three times" and, in earlier years had been charged interest "a couple [of] times," she testified that she did not believe the balance due in January 1990 included interest charges.[4] The reason for this belief was based on the fact that Omni applied payments to interest first. That testimony, if believed, was sufficient to meet Omni's burden of proof as to existence of an indebtedness of $14,-146.31 as of January 25, 1990.

## B.

## ISSUE 4

Appellants next contend that the trial court erred "in not finding that the 'finance charge' unilaterally imposed was an unenforceable penalty" and therefore an improper charge. Appellants assert:

> Even if [the] Strohs had agreed, the imposition of these charges would amount to an unenforceable penalty. It is well recognized that the normal compensation for delayed payment is the imposition of interest, as discussed above.

---

4. The bookkeeper did not say what annual rate of interest was charged prior to January 1, 1990, and she was not cross-examined as to that point.

The imposition of a higher charge cannot be justified because the amount of the damages can easily be computed. In order to find that an agreed on term is enforceable as a liquidated damage provision, it must be shown that the parties at or before the execution of the contract agreed on the sum as liquidated damages and that the sum was in lieu of anticipated damages that were in their nature uncertain and incapable of exact ascertainment. *Baltimore Bridge Co. v. United Railways and Electric Co.*, 125 Md. 208 [93 A. 420] (1915). If there is any doubt on the point, the clause must be construed as a penalty. *Willson v. Mayor and City Council of Baltimore*, 83 Md. 203 [34 A. 774] (1896).

We agree with appellants that the late fees or finance charges constituted an unenforceable penalty under Maryland common law. Recently decided in the case of *United Cable v. Burch*, 354 Md. 658, 662–63, 732 A.2d 887 (1999), the Court of Appeals was presented with the issue of whether a five dollar per month late fee imposed by a cable company, United Cable Television of Baltimore Ltd. Partnership, upon its customers was an unenforceable penalty. The contract between United Cable and its customers provided:

Charges for service start within 24 hours after service is installed. The charges for one month's service, any deposits, and any installation or equipment-lease fees, are payable when service is installed. After that, we will bill you each month in advance for service. . . .

The bills you receive will show the total amount due and the payment due date. You agree to pay us monthly by the payment due date for that service and for any other charges due us, including any administrative fees due to late payments or any returned check fees.

If you do not pay your bill by the due date, you agree to pay us an administrative fee for late payment. The administrative fee is intended to be a reasonable advance estimate of our costs which result from customers' late payments and non-payments. Other fees or charges may also be assessed by your local cable system.

We do not anticipate that you will pay your bill late and the administrative fee is set in advance because it would be difficult to determine the costs associated with any one particular late payment. We do not extend credit to our customers and the administrative fee is not interest, a credit service charge or a finance charge.

*Id.* at 664, 732 A.2d 887.

The trial court in *Burch* agreed with the class action plaintiffs that the five dollar charge was an unenforceable penalty. *Id.* at 666, 732 A.2d 887. The Court of Appeals in *Burch* agreed that the charge was an improper penalty, saying:

Under the contract, a subscriber promises to pay the account balance which is a specific amount appearing on the face of the bill and which is determined by the services rendered by United at agreed prices. A subscriber also promises to pay that amount by a specified date that also appears on the billing. Under Maryland law a United customer's promises are a contract to pay money. From this conclusion, two consequences flow that are relevant to this case. First, the measure of damages for the breach of a contract to pay money is the amount promised to be paid plus interest at the lawful rate from the due date to the date of judgment. Second, because this measure of damages is simply a matter of calculation, it may not be increased by a contractual liquidated damages provision requiring payment of a greater amount. The result is that the liquidated damages provision is a penalty.

*Id.* at 668, 732 A.2d 887.

The *Burch* Court went on to explain:

Of significance here is that "[w]here the contract or obligation is for the payment of a definite sum of money[,] *the measure of damages* is the amount of money promised to be paid, with legal interest, the allowance of interest being [a] matter of legal right." 1 J.P. Poe, *Pleading and Practice in the Courts of Law in Maryland* § 584C, at 608 (5th Tiffany ed. 1925) (Poe) (emphasis added). W.T.

Brantly, *Law of Contract* § 165(2d ed. 1922) (Brantly), is in accord, saying: "Legal interest on the money is the measure of damages for the breach of a contract to pay a sum at a certain time." *Id.* at 368 (footnote omitted). *See also Winder v. Diffenderffer*, 2 Bland 166, 204 (1829) ("Legal interest is the measure of damages which the law allows in all cases for the detention of money; which the holder is made to pay where he is in any default in not paying, or applying the money in his hands, as he was bound to do.").
*Burch*, 354 Md. at 669, 732 A.2d 887.

The Court in *Burch* held that (with certain statutory exceptions) provisions for payment of greater than the legal interest rate as a result of a breach of contracts to pay money were void as a penalty. *Id.* at 675–81, 732 A.2d 887. In Maryland, the legal rate of interest is six percent per annum unless otherwise provided by the General Assembly. *See* Md. Const. art. III, § 57. And, the Court held that because there was "no statute that authorizes or regulates United's late charges" and no statute that allowed United Cable to charge greater than six percent per year interest, those late charges remain subject to the common law rule prohibiting charges in excess of six percent per annum for money due on a contract. *Burch*, 354 Md. at 681, 732 A.2d 887. The *Burch* Court summed up by saying:

We hold that United's five dollar late fee is a penalty and not a valid liquidated damages provision. We need not and do not hold that United's late charge is usurious. We hold only that, because United's damages are fixed by common law to an easily determined amount, United's attempt to increase the damages by a liquidated damages provision produces a penalty....

*Id.* at 685, 732 A.2d 887.

■ As in *Burch*, there is here no statute applicable to the parties that would allow the plaintiff to charge a late fee of more than six percent annually. *Id.* at 675–81, 732 A.2d 887. The contract between Omni and the Strohs was a simple contract to pay money for services rendered. Accordingly, all

late fees above six percent per year charged after January 1, 1990, were improper. On the other hand, Omni was entitled to collect, even without an agreement with the Strohs, pre-judgment interest, for all monies owed at the rate of six percent annually; from January 1990 onward. *Id.* at 668, 732 A.2d 887. Accordingly, the case will be remanded to the circuit court. Upon remand the trial court should allow the parties to present additional evidence as to amount owed by the Strohs—using the six percent per annum formula—and recognizing that the balance due as of January 1990 was $14,146.31.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE PAID SEVENTY–FIVE PERCENT BY APPELLEE AND TWENTY–FIVE PERCENT BY APPELLANTS.**